301 F.3d 1299
 HOHENBERG BROS. COMPANY, A.C. Monk and Company, Inc., The Austin Tobacco Company, Inc., Cargill Americas, Inc., Cargill Citro-America, Inc., Cargill Fertilizer, Inc., Cargill, Incorporated, Carolina Leaf Tobacco Company, Inc., Dibrell Brothers, Inc., Excel Corporation, General Electric Company, K.R. Edwards Leaf Tobacco Company, Inc., Maclin-Zimmer-McGill Tobacco Co., Inc., Monk-Austin International, Inc., Thorpe-Greenville Export Tobacco Co., Inc., T.S. Ragsdale Company, Inc., Universal Leaf Tobacco Company, Inc., U.S. Steel International, Inc., U.S. Steel Mining Co., Inc., USX Corporation, USX Engineers & Consultants, Inc., BASF Corporation, BASF Magnetics Corporation, AKZO Nobel Chemicals, Inc., Reynolds Metals Company, Zeneca Inc., ISK Biosciences Corporation, Archer-Daniels-Midland Company,
ADM/Growmark River Systems, Inc., Valley Grain Products, Inc., The Coleman Company, Hill's Pet Nutrition, Inc., Standard Commercial Tobacco Company, Inc., Carolina Trading Corporation, James I. Miller Tobacco Co., Inc., PMA Incorporated, The Tobacco Trading Corporation, W.A. Adams Company, American Honda Motor Co., Inc., Honda Trading America Corporation, BP Chemicals, Inc., CBS Corporation, Continental Grain Company, Contiquincy Bunge, L.L.C., Tacoma Export Marketing Company, Farmland Industries, Inc., Farmland Foods, Inc., Farmland Hydro, L.P., Tradigrain, Inc., Tradigrain, S.A., Geneva, Lexmark International, Inc., McDonnell Douglas Corporation, Monsanto Company, Solar Turbines Incorporated, EEC International, Inc., ECCA Calcium Products, Inc., Koch Carbon, Inc., Koch Refining Company, Olin Corporation, Physics International Company, Sterling Chemicals, Inc., IMC Global Operations, Inc., IMC-Agrico Company, and International Multifoods Corporation., Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 No. 01-1460.
 No. 01-1461.
 No. 01-1462.
 No. 01-1463.
 No. 01-1464.
 No. 01-1465.
 No. 01-1466.
 No. 01-1467.
 No. 01-1468.
 No. 01-1469.
 No. 01-1470.
 No. 01-1471.
 No. 01-1472.
 No. 01-1473.
 No. 01-1474.
 No. 01-1475.
 No. 01-1476.
 No. 01-1477.
 No. 01-1478.
 No. 01-1479.
 No. 01-1480.
 No. 01-1481.
 No. 01-1482.
 No. 01-1483.
 No. 01-1484.
 No. 01-1485.
 No. 01-1486.
 No. 01-1487.
 No. 01-1488.
 No. 01-1489.
 No. 01-1490.
 No. 01-1491.
 No. 01-1492.
 No. 01-1493.
 No. 01-1494.
 No. 01-1495.
 No. 01-1496.
 No. 01-1497.
 No. 01-1498.
 No. 01-1499.
 No. 01-1500.
 No. 01-1501.
 No. 01-1502.
 No. 01-1503.
 No. 01-1504.
 No. 01-1505.
 No. 01-1506.
 No. 01-1507.
 No. 01-1508.
 No. 01-1509.
 No. 01-1510.
 No. 01-1511.
 No. 01-1512.
 No. 01-1513.
 No. 01-1514.
 No. 01-1515.
 No. 01-1516.
 No. 01-1517.
 No. 01-1518.
 No. 01-1519.
 No. 01-1520.
 No. 01-1521.
 No. 01-1522.
 No. 01-1523.
 No. 01-1524.
 No. 01-1525.
 No. 01-1526.
 No. 01-1527.
 No. 01-1528.
 No. 01-1529.
 No. 01-1530.
 No. 01-1531.
 No. 01-1532.
 No. 01-1533.
 No. 01-1534.
 No. 01-1535.
 No. 01-1536.
 No. 01-1537.
 No. 01-1538.
 No. 01-1539.
 No. 01-1540.
 No. 01-1541.
 No. 01-1542.
 No. 01-1543.
 United States Court of Appeals, Federal Circuit.
 Decided: August 26, 2002.
 
 Daniel G. Jarcho, McKenna & Cuneo, L.L.P., of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Peter Buck Feller and Joseph F. Dennin.
 Jeffrey A. Belkin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Todd A. Hughes, Assistant Director. Of counsel on the brief was Richard K. McManus, Office of the Chief Counsel, United States Customs Service, of Washington, DC.
 Before MAYER, Chief Judge, RADER, and BRYSON, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 In the context of refunds of the Harbor Maintenance Tax, the United States Court of International Trade denied Hohenberg Bros., Co.'s motion to amend the court's consent judgments. Because the Court of International Trade did not abuse its discretion in denying the motion, this court affirms.
 
 I.
 
 2
 These consolidated cases involve the refund of the Harbor Maintenance Tax (HMT) to certain exporters. The HMT, enacted as part of the Water Resources Development Act of 1986, 26 U.S.C. §§ 4461-4462, is an ad valorem tax on shipments of commercial cargo. Several thousand exporters challenged the constitutionality of the HMT as applied to exporters. In a test case, a three-judge panel of the Court of International Trade held that the HMT, as applied to exports, violated the Export Clause of the United States Constitution. United States Shoe Corp. v. United States, 907 F.Supp. 408 (CIT 1995). On appeal, a five-judge panel of this court agreed. United States Shoe Corp. v. United States, 114 F.3d 1564 (Fed.Cir.1997). The Supreme Court affirmed. United States v. United States Shoe Corp., 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998).
 
 
 3
 After the Supreme Court affirmed the unconstitutionality of the HMT on exports, the Court of International Trade adopted a procedure for Customs to provide HMT refunds. In compliance with that procedure, each claimant executed a consent judgment as prescribed by the Court of International Trade. The consent judgment entitled the exporters to an immediate HMT refund within the two-year statute of limitations period for suits filed under 28 U.S.C. § 1581(i).
 
 
 4
 Concurrently, the Court of International Trade developed a test case procedure to resolve the remaining issues surrounding the HMT, including the award of prejudgment interest. The court selected International Business Machines Corp. v. United States, No. 94-10-00625, 1998 WL 325156 (CIT 1998), as the test case to determine the eligibility of HMT refunds for prejudgment interest. In that case, IBM had filed its action under § 1581(i).
 
 
 5
 The Court of International Trade entered Hohenberg's consent judgment on March 30, 1999. Neither party appealed that judgment. Consequently, Hohenberg immediately received a refund of its HMT principal from Customs. That judgment, as well as the consent judgments executed by other exporters, noted the court's jurisdiction under 28 U.S.C. § 1581(i), consistent with that court's jurisdictional rulings at the time. The judgments also provided for interest on the principal if the appellate proceedings in the IBM test case found HMT refunds entitled to interest. In International Business Machines Corp. v. United States, 201 F.3d 1367, 1374 (Fed. Cir.2000) (IBM), this court determined that no statute provided an interest award arising out of a judgment under 28 U.S.C. § 1581(i).
 
 
 6
 Subsequently, on October 13, 2000, Hohenberg, along with those exporters who had received immediate HMT refunds under the consent judgments and who had initially challenged the HMT through the refund-request-and-protest process identified in Swisher International, Inc. v. United States, 205 F.3d 1358 (Fed.Cir.2000),[1] filed a motion before the Court of International Trade seeking to amend those judgments. Specifically, Hohenberg sought to amend the March 30, 1999 consent judgment to invoke the jurisdiction of that court under 28 U.S.C. § 1581(a) rather than 28 U.S.C. § 1581(i). Further, Hohenberg sought an award of post-summons interest under 28 U.S.C. § 2644, the interest provision applicable to awards under § 1581(a) jurisdiction. On December 28, 2000, the Court of International Trade denied that motion.
 
 
 7
 On March 21, 2001, Hohenberg renewed its motion to amend the March 30, 1999 judgment under Court of International Trade Rules (RCIT) 59(e) and 60(b) to acquire jurisdiction in the Court of International Trade under § 1581(a). Hohenberg additionally sought an award of post-summons interest under 28 U.S.C. § 2644, and an award of pre-summons interest under 19 U.S.C. § 1505, or in the alternative, under the Constitution of the United States. The trial court denied that motion on May 10, 2001. The court acknowledged that "[a]s in Swisher, [Hohenberg] perfected § 1581(a) protest denial jurisdiction." Nonetheless, the Court of International Trade held that the judgment was not jurisdictionally defective and declined to amend the judgment. In so holding, the court reasoned that it had jurisdiction in this matter under either § 1581(a) or (i). Hohenberg timely appealed to this court, which has exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).
 
 
 8
 On appeal, Hohenberg argues that this court's decision in Swisher requires the Court of International Trade to amend the jurisdictional statement in the judgment. Hohenberg asserts that because jurisdiction of the court was proper under § 1581(a), Hohenberg is entitled to post-summons interest on HMT refunds under 28 U.S.C. § 2644. Hohenberg further cites IBM as confirming that § 2644 requires an award of interest in this case. Additionally, Hohenberg contends that because the HMT is treated as a customs duty under 26 U.S.C. § 4462(f)(1) for administration and enforcement purposes, Hohenberg is entitled to pre-summons interest on HMT refunds pursuant to 19 U.S.C. § 1505. Alternatively, Hohenberg argues that the Export Clause mandates payment of interest on HMT refunds. Finally, Hohenberg argues that the government's retention of interest on the unconstitutional HMT amounts to a Fifth Amendment taking of private property.
 
 II.
 
 9
 This court reviews a refusal by the Court of International Trade to grant relief on a motion under RCIT 59 or 60 for an abuse of discretion. Mass. Bay Transp. Auth. v. United States, 254 F.3d 1367, 1378 (Fed.Cir.2001). To constitute an abuse of discretion, the trial court's decision must be clearly unreasonable, arbitrary or fanciful, or based on clearly erroneous findings of fact or erroneous conclusions of law. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed.Cir. 1998) (en banc). This court reviews legal determinations by the Court of International Trade de novo. Fla. Sugar Mktg. & Terminal Ass'n v. United States, 220 F.3d 1331, 1333 (Fed.Cir.2000).
 
 
 10
 Courts interpret a consent judgment according to general principles of contract law. Diversey Lever, Inc. v. Ecolab, Inc., 191 F.3d 1350, 1352 (Fed.Cir. 1999); Novamedix, Ltd. v. NDM Acquisition Corp., 166 F.3d 1177, 1180 (Fed.Cir. 1999). Furthermore, "[t]he scope of a consent decree is limited to its terms and ... its meaning should not be strained." Foster v. Hallco Mfg. Co., 947 F.2d 469, 481, 20 USPQ2d 1241, 1250 (Fed.Cir.1991) (citing United States v. Armour & Co., 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). Hence, as in a contract, the terms of the judgment bind its parties.
 
 
 11
 In this case, the Court of International Trade entered on March 30, 1999, a consent judgment (Judgment) executed by Hohenberg's counsel and the government's attorneys. The relevant paragraphs of the judgment are:
 
 
 12
 2. The court has jurisdiction under 28 U.S.C. § 1581(i) (1994).
 
 
 13
 . . . .
 
 
 14
 6. Interest shall be paid on the refunded amounts in accordance with a schedule set by the court should appellate court proceedings in International Business Machines Corp. v. United States, Court No. 94-10-00625, finally resolve that interest is owing on HMT payments.
 
 
 15
 . . . .
 
 
 16
 9. Upon entry of judgment, plaintiff releases, waives, and abandons all claims against the defendant, its officers, agents, and assigns, arising out of all HMT export payments for the non-severed quarters identified in the attached Harbor Maintenance Tax Payment Report, including, but not limited to, all claims for costs, attorneys fees, expenses, compensatory damages, and exemplary damages. Defendant releases . . . .
 
 
 17
 Hence, the judgment states that the Court of International Trade had jurisdiction under § 1581(i).[2] Judgment ¶ 2. The judgment also expressly states that interest on the refunded amounts depends on the outcome of IBM, the § 1581(i) interest test case. Id. ¶ 6. Moreover, under ¶ 9 of the judgment, Hohenberg waived all future claims. Id. ¶ 9.
 
 
 18
 In the § 1581(i) interest test case, the Court of International Trade entered judgment for IBM and ordered a refund of the principal. 1998 WL 325156, at *1. The court also adopted its earlier position awarding interest under 28 U.S.C. § 2411, a provision for interest on income tax overpayments. Id. On appeal, the Federal Circuit reversed the Court of International Trade's interest award. IBM, 201 F.3d at 1369. In IBM, this court held that the United States is liable for interest only in the event of a clear statutory waiver of sovereign immunity. Id. (citing Library of Cong. v. Shaw, 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)). This court also found that neither § 2411, nor any statutory provision of the customs laws, provides an express waiver of sovereign immunity sufficient to authorize interest on HMT refunds. Id. at 1374. In the present case, because the consent judgment unambiguously rests on jurisdiction under § 1581(i) and because interest on the refunded amounts is dependent on the outcome of IBM, Hohenberg is not entitled to any interest on its HMT refunds.
 
 
 19
 Hohenberg now claims that this court's decision in Swisher requires the Court of International Trade to amend the judgment to provide that jurisdiction in the court would have been proper under § 1581(a),[3] instead of § 1581(i). In Swisher, this court held that jurisdiction arises under § 1581(a) if a taxpayer has exhausted applicable administrative remedies, and timely filed suit in the Court of International Trade. Swisher, 205 F.3d at 1364-65. Because Hohenberg had initially challenged the HMT through the refund-request-and-protest process identified in Swisher, Hohenberg seeks to amend its consent judgment to assert jurisdiction under § 1581(a).
 
 
 20
 In its original complaint, Hohenberg had asserted jurisdictional bases under §§ 1581(a) and (i) in the alternative, but ultimately executed the consent judgment with the § 1581(i) jurisdictional statement. As the Court of International Trade noted, Hohenberg could have preserved its claim under § 1581(a) by not signing the consent judgment. Instead, Hohenberg chose to rely solely on its rights under § 1581(i) despite ongoing litigation as to § 1581(a) in Swisher. By voluntarily entering the consent judgment, Hohenberg benefited by receiving immediate refund of its HMT payments. Furthermore, Hohenberg did not seek more flexible language on the interest provision or on the jurisdiction in the consent judgment. Nor did Hohenberg appeal the judgment or the jurisdictional basis of the judgment until after this court issued its decision in Swisher.
 
 
 21
 As the government argues, all parties executed the judgment to gain immediate HMT refunds. By executing the judgment, Hohenberg also expressly waived all future claims arising out of its HMT export payments against the government. Judgment ¶ 9. In short, Hohenberg chose to receive immediate compensation and took a gamble on the outcome of IBM. Because parties to the consent judgment are bound by the terms of the judgment, the Court of International Trade did not abuse its discretion by holding Hohenberg to its bargain and refusing to amend the judgment.
 
 
 22
 Hohenberg asserts that because jurisdiction of the Court of International Trade was proper under § 1581(a), Hohenberg is entitled to post-summons interest on HMT refunds pursuant to 28 U.S.C. § 2644. Hohenberg further cites IBM as confirming that § 2644 requires an award of interest in this case. In IBM, this court cited 28 U.S.C § 2644 as a possible basis for an interest award, but concluded that that section did not apply in that case because action was filed under 1581(i). IBM, 201 F.3d at 1373. Thus, when read together with Swisher, IBM allows interest to those who invoked jurisdiction under § 1581(a). As discussed above, however, the Court of International Trade did not abuse its discretion by refusing to amend the judgment to assert jurisdiction under § 1581(a). Hence, Hohenberg is not entitled to post-summons interest on HMT refunds pursuant to 28 U.S.C. § 2644.
 
 
 23
 As to Hohenberg's alternative arguments that it is entitled to interest on HMT refunds under 19 U.S.C. § 1505, the Export Clause, and the Takings Clause, this court has recently held in United States Shoe Corp. v. United States, 296 F.3d 1378 (Fed.Cir.2002), that neither the Constitution nor any statute mandates the payment of interest. Accordingly, these provisions do not give Hohenberg any entitlement to pre-summons interest on HMT refunds. In sum, the Court of International Trade did not abuse its discretion in denying Hohenberg's motion to amend the court's March 30, 1999 consent judgment.
 
 COSTS
 
 24
 Each party shall bear its own costs.
 
 
 25
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 InSwisher International, Inc. v. United States, 205 F.3d 1358, 1364-65 (Fed.Cir. 2000), the exporter had initially challenged the HMT through the refund-request-and-protest process. This court found jurisdiction under 28 U.S.C. § 1581(a) for properly protested HMT refund claims.
 
 
 [2]
 28 U.S.C. § 1581(i) states:
 In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for —(1) revenue from imports or tonnage; (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
 
 
 [3]
 28 U.S.C. § 1581(a) states: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."