NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**YOLANDA Y. BELL,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2020-1325

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-15-0474-I-4.

---

Decided:  January 5, 2021

---

DOUG HARTNETT, Elitok & Hartnett at Law, L.L.C., Washington, DC, for petitioner.

KELLY A. KRYSTYNIAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.; TROY RICHARD HOLROYD, Defense Logistics Agency, United States Department of Defense, Fort Belvoir, VA.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Petitioner Yolanda Bell appeals the Merit Systems Protection Board's decision affirming the Department of Defense's action removing her from her Program Analyst position with the Defense Logistics Agency due to unauthorized absence. Ms. Bell argues that a remand is necessary because the Board erred in its evidentiary rulings regarding the proposed testimony of three witnesses. Because we conclude that the Board did not abuse its discretion in its evidentiary rulings, we affirm the Board's decision.

BACKGROUND

Ms. Bell was employed by the Department of Defense (DoD) Defense Travel System as a Program Analyst beginning in November 2009. After the Defense Travel System was absorbed by the Defense Logistics Agency (DLA or the Agency), Ms. Bell began working for DLA as a Program Analyst in July 2011. Michael Simon was Ms. Bell's supervisor from 2009 until February 2013 when Davis McLemore became Ms. Bell's supervisor. In January 2012, while Mr. Simon was her supervisor, DLA approved Ms. Bell's request to telework four days a week as a medical accommodation.

Later that year, in November 2012, Ms. Bell filed an Office of Workers' Compensation Programs (OWCP) claim for the aggravation of her medical conditions, as well as an Equal Employment Opportunity (EEO) complaint for disability discrimination and retaliation. She also reported certain invoicing activities to the DoD Office of the Inspector General (IG). Ms. Bell subsequently requested full-time telework as a reasonable accommodation, but her new supervisor, Mr. McLemore, denied the request in December 2013, reducing her telework schedule to two days per

week from the previous four-day telework schedule. Ms. Bell refused to sign the new two-day-a-week telework agreement and did not return to work for six months despite repeated requests to report to work. This resulted in six months of absence without leave (AWOL).

In April 2014, while she was AWOL, Ms. Bell filed a complaint in the U.S. District Court for the Eastern District of Virginia alleging claims of disability discrimination and failure to reasonably accommodate. The district court ultimately granted summary judgment on Ms. Bell's claims in the DoD's favor and the U.S. Court of Appeals for the Fourth Circuit later affirmed. *Bell v. Dep't of Def.*, 603 F. App'x 211 (4th Cir. 2015); *see Bell v. Dep't of Def.*, 668 F. App'x 454 (4th Cir. 2016) (affirming the district court's denial of Ms. Bell's motion to set aside the judgment and dismissing Ms. Bell's motion for reconsideration).

On November 14, 2014, Mr. McLemore sent Ms. Bell a proposed notice of removal based on her AWOL. This notice identified Robert Foster as the deciding official for the removal. On November 28, Ms. Bell wrote to Mr. McLemore and others, requesting several categories of documents from the Agency that she believed were necessary for her reply to the proposed notice of removal. In her letter, Ms. Bell also stated that she planned to raise affirmative defenses, including "reprisal for engaging in activity protected under 5 USC § 2302(b)(8)(engaging in protected activity under the Whistleblower Protection Act)." J.A. 112. DLA Human Resources Specialist Peggy Coleman responded to Ms. Bell and fulfilled the request for information. Ms. Bell filed a complaint with Congress on December 15, 2014, requesting a stay of DLA's proposed removal. After Ms. Bell responded to the removal notice, Mr. Foster made his decision to remove her on January 20, 2015. J.A. 4, 117–19. She then filed another complaint with Congress on January 21, 2015 regarding her removal. DLA officially removed Ms. Bell on February 6, 2015.

In January 2018, Ms. Bell appealed her removal from DLA to the Board. She raised several affirmative defenses, including disability discrimination, failure to accommodate, and that she was removed in retaliation for whistleblowing activities based on her: (1) EEO complaint; (2) OWCP claim; (3) reports to the DoD IG; and (4) complaints to Congress.

In March 2018, the Board issued a res judicata order explaining that the failure to accommodate and disability discrimination claims had been resolved by the Fourth Circuit in a final judgment on the merits. J.A. 133–34. Later, in the May 2018 prehearing order, the Board finalized the witness list and excluded most of Ms. Bell's witnesses because they were offered to support her disability discrimination and failure to reasonably accommodate affirmative defenses that were barred by res judicata. J.A. 95, 106–07, 107 n.7. In particular, the Board's order excluded Ms. Bell's requested witness Mr. Simon from testifying, whereas it allowed Mr. Foster and Ms. Coleman to testify regarding certain topics as both Ms. Bell and the Agency proposed Mr. Foster and Ms. Coleman as witnesses. J.A. 106. The Board's prehearing order further explained that it would not adjudicate Ms. Bell's claims relating to the revocation of telework, issues related to performance, constructive suspensions, or purported forced retirement. J.A. 96 n.2.

After conducting a hearing on June 8, 2018, the Board issued its initial decision affirming the Agency's removal action. The Board found that DLA had proved its AWOL charge, that removal promoted the efficiency of the service, that the penalty was reasonable, and that Ms. Bell failed to prove any of her affirmative defenses.

On October 1, 2018, Ms. Bell filed suit in the U.S. District Court for the District of Columbia asserting, among other claims, that she was removed in violation of the Whistleblower Protection Act (WPA). *Bell v. Esper*, No. 18-

02277, 2019 WL 6910032, at *1 (D.D.C. Dec. 19, 2019). The district court concluded that Ms. Bell should have raised the WPA claims in an appeal from the Board to this court instead of filing a new suit in the district court. *Id.* at *3. The case was then transferred to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Ms. Bell requests that this court vacate the Board's decision and remand on the ground that the Board "acted in an arbitrary manner when it prevented [Ms.] Bell full discovery, and later denied her the ability to examine witnesses at the hearing on the retaliation issue or outright precluded them." Pet. Br. 7. In particular, Ms. Bell asserts that the Board erred in its evidentiary rulings regarding the proposed testimony of Mr. Simon, Ms. Coleman, and Mr. Foster.

We must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Higgins v. Dep't of Veterans Affairs*, 955 F.3d 1347, 1353 (Fed. Cir. 2020); *see Hayden v. Dep't of Air Force*, 812 F.3d 1351, 1356 (Fed. Cir. 2016). We review the Board's decision to exclude witnesses under an abuse of discretion standard. *Chudson v. E.P.A.*, 17 F.3d 380, 384 (Fed. Cir. 1994) (citing *Davis v. Office of Pers. Mgmt.*, 918 F.2d 944, 946 (Fed. Cir. 1990)); *see Higgins*, 955 F.3d at 1349. "To constitute an abuse of discretion, the trial court's decision must be clearly unreasonable, arbitrary or fanciful, or based on clearly erroneous findings of fact or erroneous conclusions of law." *Hohenberg Bros. Co. v. United States*, 301 F.3d 1299, 1303 (Fed. Cir. 2002) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc)). Excluding testimony of witnesses that would be irrelevant or cumulative is not an

abuse of discretion.  *See Higgins*, 955 F.3d at 1357 (concluding that the Administrative Judge did not abuse his discretion in excluding testimony that was irrelevant or redundant).

We see no abuse of discretion in the Board's exclusion of Mr. Simon as a witness because his proposed testimony that Ms. Bell sought to elicit was irrelevant to the narrow issues presented in this case.  Ms. Bell indicated that Mr. Simon, as her prior supervisor, would testify about "his knowledge of Ms. Bell's EEO and OWCP filings," as well as her teleworking request, complaints he received from his supervisor and others about his initial grant of four days a week for teleworking, and the teleworking schedules of other DLA employees.  J.A. 172–73.  The Board excluded his testimony in its entirety, reasoning that his testimony was relevant to the disability discrimination and failure to accommodate claims barred by res judicata and did not concern Ms. Bell's AWOL charge.  *See* J.A. 106–07, 107 n.7.

We conclude that the Board acted reasonably in excluding Mr. Simon's testimony.  None of the proffered testimony from Mr. Simon is relevant to the AWOL charge or Ms. Bell's whistleblower retaliation defenses.  Mr. Simon was not the proposing official, deciding official, or even Ms. Bell's supervisor during the AWOL period.  Indeed, Mr. Simon ceased being Ms. Bell's supervisor more than one year before the AWOL period began.  Mr. McLemore was Ms. Bell's first-level supervisor during the entire AWOL period and the Board allowed his testimony.

The Board also did not abuse its discretion by limiting the scope of Ms. Coleman's testimony.  Ms. Bell expected Ms. Coleman, as the primary human resources contact, to testify that she was aware of Ms. Bell's OWCP claim and EEO complaint.  J.A. 176–77.  On appeal, Ms. Bell argues that she was not allowed to "explore Ms. Coleman's knowledge of Ms. Bell's [whistleblowing] activity" and that Ms. Coleman "was clearly aware of Ms. Bell's intent to

present evidence in the response to the proposal of retaliation." Pet. Br. 11. But Ms. Bell was not precluded from examining Ms. Coleman regarding whether the officials involved in her removal knew about her whistleblowing activities. Indeed, Ms. Coleman testified concerning Ms. Bell's alleged whistleblowing activities, including her filing of the EEO complaint and OWCP claim. J.A. 375–76, 379 (Tr. 25:5–27:22, 32:12–21). Although Ms. Bell had the opportunity to question Ms. Coleman regarding her knowledge of alleged whistleblower retaliation during the deposition, she did not do so.

Finally, Ms. Bell argues that the Board erred by preventing her from "discovering and presenting evidence that contradicted Mr. Foster's testimony that he did not know of her disclosures to the IG." Pet. Br. 10. Specifically, Ms. Bell contends that she should have been able to ask Mr. Foster about his knowledge of her November 28, 2014 letter where she indicated that she planned to allege retaliation under the WPA. Pet. Br. 9–10. Review of the Board's pretrial order and other rulings, however, reveal that the Board did not prevent Ms. Bell from eliciting this testimony. When Ms. Bell deposed Mr. Foster, she questioned him regarding his decision to remove her. During the deposition, Ms. Bell did not raise the alleged contradictions between his testimony and her November 28, 2014 letter. When asked during the deposition if Mr. Foster knew about Ms. Bell's IG complaint or complaints to Congress, Mr. Foster explained that he did not recall any congressionals involving Ms. Bell and that he could not recall any complaints from Ms. Bell to the IG. J.A. 324 (Tr. 38:21–39:11). Moreover, Ms. Bell's November 28, 2014 letter, while mentioning her intent to raise defenses under the WPA, did not identify any specific disclosures, including disclosures to the IG. In fact, Ms. Bell's two complaints to Congress occurred after her proposed removal and after Mr. Foster finalized her removal.

Furthermore, the Board did not prevent Ms. Bell from pursuing discovery regarding Mr. Foster's knowledge of her whistleblower disclosures, including her IG complaint and complaints to Congress. Mr. Foster's deposition testimony covered his involvement in Ms. Bell's removal based on her charge of AWOL. Ms. Bell had ample opportunity to seek information from Mr. Foster on his knowledge of the whistleblowing claims, but chose not to do so during discovery. Accordingly, we conclude that the Board did not err in any evidentiary rulings regarding Mr. Foster.

## CONCLUSION

Contrary to Ms. Bell's arguments, the Board did not act in an arbitrary manner by preventing Ms. Bell discovery or denying her an opportunity to examine witnesses. We have also considered Ms. Bell's other arguments, but we do not find them convincing. For the foregoing reasons, we affirm the Board's decision.

## AFFIRMED

### COSTS

Costs to Respondent.